# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **T.M., X.M., and A.M.**

**No. 20-0179** (Nicholas County 19-JA-50, 19-JA-51, and 19-JA-52)

**FILED**

**November 4, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.M., by counsel M. Tyler Mason, appeals the Circuit Court of Nicholas County's January 14, 2020, order terminating his parental rights to T.M., X.M., and A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Juliana C. Dotsenko, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights based upon erroneous findings derived from inadmissible hearsay evidence, expert opinions from lay witnesses, information never admitted into evidence, and clearly mistaken interpretations of expert witness testimony.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner's substance abuse resulted in his abuse and neglect of the children. According to the DHHR, petitioner executed a safety plan in January of 2019 that required him to remain drug free, yet he tested positive for methamphetamine and amphetamine on February 5, 2019. The petition further alleged that petitioner registered an "administrative failure" on February 8, 2019, as a result of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

his failure to appear for a screen and produced diluted samples on February 12, 2019, and March 5, 2019. The petition further alleged that petitioner and the mother engaged in domestic violence in March of 2019, which resulted in a criminal complaint being filed against petitioner. Specifically, the petition alleged that petitioner grabbed the mother by the back of her head and threw her to the ground in the presence of X.M. Finally, the petition alleged that petitioner was in arrears on child support for A.M. in excess of $6,000.

Following the petition's filing, petitioner stipulated at the adjudicatory hearing to having violated the safety plan by testing positive for methamphetamine and amphetamine, failing to appear for one screen, providing two diluted samples, and being in arrears on his child support. The circuit court accepted the stipulation and adjudicated petitioner as an abusing and neglectful parent. The circuit court also granted petitioner a post-adjudicatory improvement period that required him to visit the children, contingent upon three clean drug screens; remain free of drugs and alcohol; not allow anyone in the home or around the children who abuses drugs or alcohol; maintain contact with the DHHR and service providers; participate in and successfully complete in-home services to address issues with parenting, housekeeping, cleanliness, and budgeting; obtain and maintain safe and suitable housing; obtain and maintain employment; and undergo a psychological evaluation and follow all its recommendations. Thereafter, the circuit court granted petitioner an extension of his improvement period.

In January of 2020, the circuit court held a dispositional hearing, during which the DHHR introduced evidence that petitioner failed several drug screens. Based on the evidence, the circuit court found that petitioner failed approximately twenty-four drug screens from March of 2019 to January of 2020. The circuit court further noted that at a prior hearing in December of 2019, petitioner appeared to be under the influence of methamphetamine and tested positive for methamphetamine and alcohol that same day. The court noted that three days later, petitioner tested positive for methamphetamine, amphetamine, and THC. Despite the DHHR's diligent efforts to accommodate petitioner's schedule in arranging drug screens, the circuit court found that petitioner repeatedly made excuses for why he could not attend the screens and failed to provide the DHHR with reliable information about his work schedule, including having provided conflicting information. Further, the circuit court noted that petitioner offered as an explanation for his multiple positive methamphetamine screens that a prescription medication caused those results, although petitioner "offered no scientific evidence to support this claim." Additionally, despite the fact that he has tattoos, petitioner indicated that he refused multiple alcohol screens because of his fear of needles. Ultimately, the court found that petitioner's testimony concerning these excuses lacked credibility. In regard to his claims of having missed drug screens due to his employment, the circuit court found that petitioner nonetheless regularly attended his parenting classes, which evidenced an inconsistency in petitioner's excuses. Petitioner also admitted to using synthetic marijuana during the proceedings. Even though he was offered substance abuse treatment on several occasions, the circuit court found that petitioner refused such treatment. The circuit court further found that petitioner lived with his mother and was still in arrears on his child support at the time of the dispositional hearing. Based on the evidence, the circuit court found that petitioner failed to comply with the terms and conditions of his improvement period and that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future. Finding that the children required continuity of caretakers and a stable, permanent home environment, the court also found that termination of petitioner's

parental rights was in the children's best interests. Accordingly, the court terminated petitioner's parental rights to the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

At the outset, we note that many of petitioner's arguments on appeal can be resolved on the lack of credibility of his testimony alone. In support of his lone assignment of error, petitioner attacks the circuit court's termination of his parental rights upon several bases, including its consideration of certain testimony and other evidence. Petitioner cites extensively to his own testimony in order to argue that the circuit court's findings lacked a basis in the record. What petitioner fails to recognize, however, is that the circuit court made detailed findings in the order on appeal about petitioner's lack of credibility. Specifically, the circuit court identified several aspects of petitioner's testimony that it found incredible, including his assertion that his noncompliance throughout the proceedings was the result of his employment despite evidence that the DHHR "made diligent efforts to accommodate" his schedule; that his medication caused multiple positive screens for methamphetamine, despite his failure to offer scientific evidence to support his claim; and that he has a fear of needles that precluded him from testing for alcohol, despite the fact that he has tattoos. As this Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Accordingly, we decline to disturb these credibility determinations on appeal, and any argument

---

[2]According to respondents, the permanency plan for A.M. is to remain in the custody of her nonabusing mother. Respondents further indicate that the mother of T.M. and X.M. is currently participating in an improvement period and anticipate dismissal of the proceedings against the mother with a permanency plan for those children to be returned to her custody.

predicated on petitioner's testimony supporting an outcome other than termination of his parental rights is unavailing.

Petitioner's remaining arguments are all based on the admission or consideration of certain evidence below. First, petitioner attacks the specifics of the circuit court's dispositional order, which set forth the following in regard to his failed drug screens:

[Petitioner] has had the following drug screen results which were either positive for methamphetamine, THC, oxycodone, refusal no-show or dilute:

| | |
|---|---|
| March 2019 | 1 fail |
| April 2019 | 3 fails |
| May 2019 | 5 fails |
| June 2019 | 1 fail |
| July 2019 | 1 fail |
| August 2019 | 4 fails |
| September 2019 | 3 fails |
| October 2019 | 1 fail |
| November 2019 | 3 fails including methamphetamine and THC on 11-14-2019 |
| December 2019 | 1 fail |
| January 2020 | 1 fail |

Petitioner takes issue with this language because he argues that it is difficult to determine the basis the court had for finding that each individual screen constitutes a failure when no specific dates are listed and the court did not delineate whether the failure was due to the presence of an illegal substance, a diluted sample, or petitioner missing a screen.[3] This argument, however, does not entitle petitioner to relief for several reasons, chief among them being that any of the three circumstances—positive for substances, diluted, or refused—constituted a failure on petitioner's part. Further, it is unnecessary to parse out the specific evidence introduced below in regard to each of these failures, given petitioner's acknowledgment of certain key facts that demonstrate his continued substance abuse throughout the proceedings.

---

[3]Petitioner also takes issue with the circuit court's indication that "[a]fter careful consideration of the testimony and a thorough review of the file, and otherwise being fully informed," it made its findings of fact and conclusions of law. On appeal, petitioner argues, without any supporting citation to authority, that the West Virginia Rules of Evidence "do not permit the trier of fact to peruse the court file for information not otherwise entered into evidence as contemplated by the Rules" or permit a court "to make findings by 'otherwise being fully informed' of information outside the court record." This argument, however, assumes facts that are not explicit in the court's language and presumes that the court considered inappropriate information. The record simply does not support this assumption and we find that petitioner is entitled to no relief.

4

The record shows that petitioner stipulated to a substance abuse problem during these proceedings,[4] as evidenced by his positive screen for methamphetamine prior to the petition's filing, in addition to the fact that he failed to appear for one additional screen and produced diluted samples on two other occasions. These uncontroverted facts established the issues that needed to be remedied during the proceedings below. Despite the DHHR's efforts to assist petitioner in remedying these problems, petitioner later admitted to abusing alcohol, THC, and synthetic marijuana during the proceedings. Further, petitioner acknowledges that the DHHR admitted into evidence the results of two drug screens that he submitted to in December of 2019 that were positive for methamphetamine, amphetamine, THC, and alcohol. In short, it is unnecessary to—and we decline to—resolve the specific details of the evidentiary basis for all of the information listed by the circuit court in regard to petitioner's failed drug screens because petitioner acknowledges that properly admitted evidence established that his substance abuse existed at the time of the petition's filing and continued throughout the proceedings. Petitioner's admissions and failed drug screens demonstrate that he failed to address the conditions of abuse and neglect at issue and this evidence fully supports the termination of his parental rights.[5]

Although petitioner does not challenge the admission of the drug screens from December of 2019,[6] he does allege on appeal that the circuit court erred in considering this evidence, as

---

[4]In his testimony at the dispositional hearing, petitioner attempted to reframe his stipulation at adjudication by asserting that he did not, in fact, admit to substance abuse but, rather, stipulated to the fact that he tested positive for methamphetamine on one occasion, refused to screen on another, and provided two diluted samples at other times. Put simply, this is an issue of semantics and does not change the fact that the DHHR alleged that petitioner's substance abuse, as evidenced by his failed screen, questionable samples, and refusal to screen, constituted abuse and neglect of the children. As the circuit court found at adjudication, petitioner admitted that "he signed a safety plan with the Department, a term of which he was to engage in no illegal substances" and that he later "failed his drug screen for methamphetamine and amphetamine." As such, it is clear that petitioner stipulated to substance abuse issues and these issues were central to the proceedings below.

[5]In his argument in support of his lone assignment of error, petitioner spends considerable time discussing reports from the DHHR and the guardian that he concedes were not admitted into evidence. Further, petitioner admits that the circuit court "did not state that it was considering any of the allegations in the reports as evidence, either testimonial or otherwise." As such, it is unclear why petitioner devotes such a significant portion of his argument asserting that these reports contain hearsay regarding his drug screen results. Because petitioner admits that the reports were not admitted into evidence or otherwise considered in the circuit court's dispositional decision, we find that it is unnecessary to discuss them herein.

[6]In the statement of facts in his brief on appeal, petitioner asserts generally that the expert witness who testified to the results of these drug screens "was unable to testify as to the error rate of the device of the confirmation drug screening procedure . . . other than to say its [sic] 'very

(continued . . . )

petitioner believes that the drug screen results should have been weighed in his favor. Although petitioner acknowledges his admission below that the results were accurate in regard to THC and alcohol, he nonetheless continues to dispute the tests' accuracy in regard to methamphetamine or amphetamine. According to petitioner, the DHHR's expert witness testified that the positive methamphetamine and amphetamine results could have been the result of his use of an over-the-counter inhaler. This assertion, however, is not an accurate representation of the record. While the witness did testify that such an inhaler could produce a positive result for methamphetamine or amphetamine, she qualified this testimony by explaining that she "d[id]n't know that it would cause this level of result." Essentially, the witness's testimony was that she knew of only one over-the-counter medicine that could cause someone to test positive for methamphetamine but that she did not believe it could produce the levels of the drug found in petitioner's specimens. Petitioner's assertion that the expert witness testified that his results could have been caused by the use of an over-the-counter inhaler is simply not supported by the record.[7]

Again, based on the evidence that petitioner recognizes was properly admitted, it is clear that the circuit court had ample evidence of petitioner's continued substance abuse throughout the proceedings below. Even if petitioner had persuaded this Court that certain evidence should not have been admitted or considered, sufficient uncontested evidence exists in the record to support our conclusion that the circuit court correctly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. Indeed, this Court has held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

---

low'" and "was also unable to answer specific questions as to who had handled the specimens in the chain of custody when the samples were taken and submitted" for testing. Petitioner further recounts his objection to the introduction of these records "on grounds that no chain of custody had been established," an objection that the court overruled. In his argument in support of his lone assignment of error, however, petitioner abandons these assertions by failing to provide any specific argument in support or citation to any authority necessary to specifically challenge the circuit court's introduction of the records at issue. Because of petitioner's failure to formulate a specific argument concerning these assertions in violation of Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address them on appeal.

[7]Petitioner further cites to testimony in his statement of facts section of his brief on appeal wherein the witness in question discussed the possibility of prescription medication causing a positive result for methamphetamine. However, petitioner abandons this assertion in his argument section in favor of asserting that his over-the-counter inhaler produced his positive results.

6

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, the record plainly demonstrates petitioner's failure to acknowledge his substance abuse issues, which created a situation in which the conditions of abuse and neglect were untreatable. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, because the proceedings concerning the mother of T.M. and X.M. are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998).[8] Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 14, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: November 4, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[8]This direction only applies if the circuit court determines that T.M. and X.M. should not return to their mother's custody.